HARRIS v. HELENA RICE DRIER, INC.

5-1129                                    297 S. W. 2d 652

Opinion delivered January 14, 1957.

*John C. Sheffield,* for appellant.

*D. S. Heslep,* for appellee.

GEORGE ROSE SMITH, J. This suit was brought by the appellee to require R. E. Harris to satisfy of record a deed of trust executed by the appellee in 1951. Harris admits that nearly all of the indebtedness secured by the deed of trust has been paid; the only point now in controversy is whether the appellee is entitled to be credited with an item amounting to $750. The chancellor decided this issue in favor of the plaintiff and granted the relief sought.

Harris organized the appellee corporation in 1949 and was originally its principal stockholder. On April 16, 1951, Harris sold his interest in the company to the other stockholders, the unpaid purchase price being evidenced by notes totaling $102,000. The corporation executed its deed of trust to secure the debt which the new owners owed to Harris. In the contract of sale Harris agreed to pay all liabilities of the corporation that were then outstanding. The pivotal question in the case is whether the corporation was justified in honoring, over Harris's protest, a $750 claim which was asserted against it under a written agreement that the corporation had made with D. L. Abernathy and William Eifling in 1949.

In the first paragraph of the contract with Abernathy and Eifling the corporation agreed to dry and store rice of the 1949 crop at twelve and a half cents a bushel. In a subsequent paragraph the corporation acknowledged the receipt of $750 as an advance payment for the drying and storage of rice and bound itself to reserve for one year, for the exclusive use of Abernathy and Eifling, storage capacity for 6,000 bushels. Harris has contended all along that the corporation's original obligation related only to the 1949 crop, that as president of the company he gratuitously extended the agreement to

include the 1950 crop, and that the contract expired as a result of the failure of Abernathy and Eifling to utilize the company's drying and storage facilities in either of those years.

Abernathy and Eifling did not agree with Harris's view that the agreement expired in 1950. In 1952 or 1953 they consulted their attorney and were told that the contract was still in force and could be availed of in a later year. They quit farming in 1954 and undertook to recover their investment in the contract by transferring it to B. C. Culp, for value. The appellee, upon the advice of its own attorney, recognized its obligation under the contract and dried 5,000 bushels of rice for Culp at fifteen cents a bushel. It now asks credit for having discharged a corporate liability that was outstanding in 1951, when the appellant agreed to satisfy all existing obligations of the corporation.

We think the appellee was correct in its conclusion that the duty to perform the 1949 contract still existed in 1954. Although the agreement initially refers only to the 1949 crop, the document later acknowledges the receipt of $750 as an advance payment for the drying and storage of rice, and the final sentence reads: "It is agreed that this contract shall remain in effect, regardless of the above specification of the number of years, until the full amount of the advance payment has been repaid." This clause unmistakably qualifies the preceding provisions of the agreement and creates a continuing obligation on the part of the promisor.

A second contention made by the appellant involves an escrow agreement that was executed in connection with Harris's sale of his stock in the corporation. By this agreement the purchasers' notes were placed in escrow with a bank. Harris relies upon a paragraph in this agreement which provides that if any demand should be made against the corporation which cannot be satisfactorily adjusted by Harris and the claimant, "then the escrow agent shall continue to hold said notes subject to a final adjudication" by a court of competent jurisdiction. We do not agree with the appellant's sugges-

tion that this clause took from the appellee the privilege of voluntarily recognizing its duty under the 1949 contract, without first compelling the creditor to resort to litigation. This provision in the escrow agreement was undoubtedly inserted for the purpose of affording Harris an opportunity to contest the validity of claims asserted against the corporation. The present case has given Harris his day in court with reference to the various legal questions arising from the Abernathy-Eifling contract; so he has no basis for complaint.

Finally, Harris attempts to interpose certain technical objections to the transaction by which the appellee discharged its obligation under the 1949 agreement. It is said that the contract was not assignable (but see Ark. Stats. 1947, § 68-801), that the assignment to Culp should have been in writing, and that the contract called for the drying of 6,000 bushels of rice at twelve and a half cents a bushel instead of the drying of 5,000 bushels at fifteen cents. Harris is not in a position to raise these objections, for he has not been prejudiced by the appellee's handling of the matter. Harris, by reason of his assumption of the corporate liabilities, was responsible for the $750 claim that existed under the Abernathy-Eifling contract. The appellee discharged that obligation, to the creditor's satisfaction, by the rendition of services worth the face amount of the claim. In these circumstances Harris has received the benefit of the transaction and was correctly required by the trial court to satisfy the record of the mortgage indebtedness.

Affirmed.